## FANNING *et al.* v. STIMSON *et al.*

1. LEASE: COVENANTS: RESERVATION OF RENTS. In a contract of lease a reservation of rent was in the following words: "At a yearly rent of one thousand dollars for the first ten years, and twelve hundred and fifty dollars for the remaining nine years, payable at the expiration of each and

Fanning v. Stimson.

every year of the lease. * * * * * The said lessees well and truly keeping and performing their part of these premises, to be by them performed as aforesaid." It was held, that the language amounted only to an implied covenant to pay the rent, and the liability of the lessee determined on the assignment of the lease to another, and the acceptance of rent by the lessor from the assignee.

*Appeal from Dubuque City Court.*

WEDNESDAY, APRIL 9.

THE facts are stated in the opinion of the court.

*John H. O'Neill* and *John L. Harvey* for the appellant.

I. If rent be reserved generally, without saying to whom, the lease will carry it to the owner of the reversion. Tayl. Land. and Ten. §§ 154–156.

II. The phrase "during the lease" is equivalent to "during the term." 1 Hilliard Real Prop. p. 20, § 32.

III. The words "yielding and paying" make an express covenant. 1 Wheat. Selw. 381, note 7; *Hollis* v. *Carr*, 2 Mod. 87; Esp. Nisi Prius, 312, et seq.; 7 Pet. Abr. 85; 1 Swift's Digest, 354; Viner's Abr. Covenant C. 10; Rolle's Abr. Covenant C. 519; *Hellar* v. *Gaspard*, Lid. 266; *Tilden* v. *Walker*, Id. 477; *Newton* v. *Osborne*, Styles, 387, 406, 431.

IV. The words in this lease upon which the covenant to pay rent arises, are not the technical words "yielding and paying," nor any words of art having a known legal signification, but terms of common use, clearly conveying to the non-professional mind the obligation of the lessee to pay the rent. As to the character of the covenant, see TINDALL, C. J., in *Williams* v. *Burnell*, 1 Man. Gr. & Sc. 429; *Hallett* v. *Wylie*, 3 John. 46; *Rains* v. *Kneller*, 4 Carr. & Payne, 3. As to what words will make an express covenant, see *Brett* v. *Cumberland*, Cro. Jac. 399; *Marshall* v. *Craig*, 1 Bibb, 379; *Wright* v. *Tuttle*, 4 Day, 321; *Mitchell* v. *Hazen*, 4 Conn. 508; *Bull* v. *Talbott*, 5 Cow.

170; *Mead* v. *Billings*, 10 John. 99; *Livingston* v. *Stickle*, 8 Paige's Ch. 402; 2 Bac. Abr. Title Covenants, A; Whart. L. Lexicon, Title Covenant, p. 227; Com. Dig. Title Covenant, 2.

*John Hodgden* and *J. S. Covel* for the appellee.

I. Rent reserved generally, without naming heirs, administrators or assigns, accrues only to the lessor, unless it is made payable "during the term." 2 Platt on Leases, 88; *Bland* v. *Inman*, Cro. Car. 288; *Richmond* v. *Butcher*, Cro. Eliz. 217; *Sacheverall* v. *Froggatt*, 3 Saund. 698; 4 Bac. Abr. 81, Executors and Administrators, H; *Jacques* v. *Gould*, 4 Cush. 384.

II. A covenant in law arising upon the *reddendum* through privity of estate runs with the land, and after assignment and the acceptance of the assignee, the lessee is no longer liable for rent. The acceptance of rent by the lessor from the assignee, is an admission that the assignee is his tenant. Platt on Leases, 163, 355. *Fisher* v. *Ameers*, Browne & Gold, 20; *Wadham* v. *Marlowe & East*, 314; *Marsh* v. *Brace*, Cro. Jac. 334; *Brett* v. *Cumberland*, Cro. Jac. 523; *Kempton* v. *Walker*, 9 Verm. 191; *Iggalden* v. *May*, 9 Ves. Jr. 330; *Vyryaw* v. *Arthur*, 1 Barn. & Cress. 416; 2 Bac. Abr. 557, Covenant B.

III. The words "yielding and paying" or " at the yearly rent" imply the condition on which an estate is to be held, and aided by privity of estate, constitutes a covenant in law, but not an independent obligation that will bind the lessee for the payment of rent, after the assignment of his lease, and the acceptance of the assignee as tenant by the lessor. And there are no words in the lease which indicate an intention on the part of the lessees to bind themselves by an independent contract to pay the rent for the whole twenty-five years, whether they parted with the estate or not. 2 Bac. Abr. Cov. B.; 2 Platt on Leases, 162;

1 Saund. 241; *Iggalden* v. *May*, and *Kempton* v. *Walker*, *supra;* Dom. Civ. L. § 2, div. 21; *Salsbury* v. *Phillips*, 10 John. 57; *Culver* v. *Sisson*, 3 Com. 264; *Scott* v. *Fields*, 7 Watts, 360; *Drummond* v. *Richards*, 2 Mum. 337; *Wolveridge* v. *Steward*, 3 Moore & Scott, 365; *Briscoe* v. *King*, Cro. Jac. 281.

IV. The action as to Jesup's Executors is barred by the Statute of Limitations; Code of 1851, § 2405.

LOWE, J. — An action to recover rent due upon a lease submitted to and tried by the court, who found the following facts, to wit:

1st. The exhibit attached to the original petition filed by plaintiffs, is a copy of the lease upon which suit is brought, and which was made by James Fanning, in his lifetime, to Frederic S. Jesup in his lifetime, and Edward Stimson, one of the defendants.

2d. Said James Fanning died about the third day of May, 1857, and plaintiffs are his legal heirs. Frederic S. Jesup died about the third day of October, 1856, and defendants, Smith, Boisot, and M. K. Jesup, are the executors of his last will and testament.

3d. Edward Stimson, one of the lessees and defendants, conveyed all his interest in the leasehold premises to Frederic S. Jesup, his co-lessee, on the 23d day of January, A. D. 1856, by deed duly acknowledged and recorded, as set up in answer of said Stimson. That on the first day of January, A. D. 1857, the said executors of said F. S. Jesup, by deed duly acknowledged and recorded, conveyed all their interest in said leasehold premises, and all the interest of their said testator, and the interest acquired from said Stimson by their said testator, absolutely and fully to Isaac E. Taylor, as set forth in answer of defendants. That said Taylor, on or about the 11th of March, A. D. 1857, entered into an agreement with one B. W. Balch, in writing, to sell

and convey to said Balch, his interest in said leasehold premises. That afterwards said Taylor conveyed the same by deed to Balch, dated the 24th of September, 1857, and duly recorded in the registry of deeds for said county, in book No. 5 of town lots, page 185, and that no rent was due at the time of the assignment of the lease and the acceptance of rent by the lessor from the assignee.

4th. That said James Fanning was paid up in full for the rent of said leasehold premises to the first of June, A. D. 1856, by said Frederic A. Jesup himself. That after the death of said Jesup, his said executors paid to said James Fanning, in person, five hundred and fifty dollars, and said Balch paid to said James Fanning, in person, fifty dollars, and after the death of said James Fanning, the said Balch paid to M. M. Hayden, administrator, and Catharine Fanning, administratrix, of the estate of said James Fanning, said Catharine being one of the plaintiffs, the further sum of sixteen hundred and fifty-eight dollars; that said payment to said Hayden and Catharine inured to the benefit of, and was in fact made to, plaintiffs.

5th. That the following order was made by the County Court of Dubuque county, Iowa, at the September term of said court, A. D. 1858, to wit:

"ESTATE OF F. S. JESUP. — *Sept. Term*, 1858.
" *Ordered*, that the executors of said estate shall cause to be published a notice of their appointment..........
........for............week in the daily............
four........a daily newspaper published in Dubuque.
"S. HEMPSTEAD, *County Judge.*"

The above evidence was shown by the clerk of the said County Court, to have been produced from the files of said court to be signed by the county judge, but was not recorded in the records of said estate. It is further found by the court, that this claim was not pending in District or Supreme

Court, and was not filed within eighteen months of publication of notice, pursuant to said order. Said publication was made four weeks in the Dubuque Express & Herald, a daily newspaper published in Dubuque, commencing 24th September, 1858. That the will of Jesup provided that his executors should continue the business of banking for five years after his death, and for that purpose might use the sum of ten thousand dollars; also that they should leave the sum of five thousand dollars in the firm of Edward Stimson & Co., for five years. That none of the debts of the estate of Jesup had been paid, that there was a suit for fifteen thousand dollars still pending in the Supreme Court against the estate. That there is a large amount of property of the estate in Illinois, still undisposed of, and which will have to be disposed of before the estate can be settled up and the administration closed, and that several suits had been commenced against the executors since the eighteen months expired, and judgments rendered thereon, without objection by executors.

Upon the foregoing facts under the pleadings in the case, the court found that the plaintiffs have no cause of action against the defendants or either of them for rent.

The single question raised by the assignment is, whether the court reached a correct conclusion upon the facts found.

The lease referred to, in the above statement of facts, is in the nature of an indenture, upon a lot in the city of Dubuque, running twenty-five years from the 1st day of June, 1854, "*At a yearly rent of one thousand dollars for the first ten years, and twelve hundred and fifty dollars for the remaining nine years, payable at the expiration of each and every year of the lease.*" * * * * "*The said lessees well and truly keeping and performing their part of these presents to be by them performed as aforesaid.*"

The words above italicised are the only reservation of rent contained in the lease. Whether they amount to an

express or implied covenant to pay rent is the important question to be determined in this cause. For, if the former, it will be conceded that under the privity of contract arising from such a covenant, the obligation of the lessees to pay rent runs with the land, and continues during the whole term. On the other hand, if it is a covenant of the latter description, then the liability of the tenant founded as it is on privity of estate, only determines upon the assignment of the lease to another, and does not survive the acceptance of rent by the lessors from the assignee. 2 Platt on Leases, 162, 163, 355; *Marsh* v. *Brace*, Cro. Jac. 334; Id. 523; 9 Vermont, 191.

Returning to the question then, whether the covenant arising upon the above *reddendum* in this lease is express or implied, we remark in the first place, that it is plain that the lease contains no undertaking or promise in *terms* or *words*, that the lessee will pay the lessor or his assigns, &c. The rent reserved is general, not to be paid to the lessor, or at the close of the term, but at the expiration of each and every year of the lease. It does not purport upon its face to create a personal obligation on the part of the lessees, distinct from and irrespective of the covenant which runs with the land. Now, aside from all authority bearing upon this point, it would seem to be not only a natural but a sound inference of law, that inasmuch as leases are assignable under the statutes, that a covenant to pay generally during the term, and not in express terms to the lessor, must necessarily run with the land, and therefore is implied, and cannot and ought not to be held to bind the assignor to a performance of the conditions therein, especially after, (as in this case) the acceptance of rent from the assignee.

Besides, the covenant arising upon the *reddendum* of this lease, as above set forth, is not stronger as affecting the continued liability of the lessees, than the covenant created

by the words "*yielding and paying.*" Whether these latter words in a lease amount to an express or implied covenant, the authorities are to some extent contradictory, as a reference to those cited by the appellants will show. Still, it is believed that the weight of all later opinions favor the idea that they amount only to an implied covenant. A fair type of the more recent of these opinions will be found reported in the 9th Vermont, 191, in the case of *Kempton* v. *Walker*, where Judge Phelps, in remarking upon a lease containing no covenant *in terms* on the part of the lessee, for the payment of rent, the demise being upon the condition of his "*yielding and paying*" the rent specified, says in relation to the question whether such words amount to an express or implied contract, that "the old authorities appear quite contradictory, and the elementary writers have handed them down to us as they are. On the whole, however, the weight of authority, and especially of modern authority, appears to be in favor of holding these covenants implied." * * * * "It seems to me obvious that the distinction has reference to the matter of the obligation, and that unless the lessee bind himself personally, in express terms, to the payment of the rent, his obligation is incident to his estate, and so far as it gives a personal remedy by action of covenant, it is implied. It was doubtless competent for the lessee to assume upon himself to pay the rent, as an enduring obligation which might survive an assignment of his term. Whether he has done so in any given case is a question of intention to be gathered from the deed. If he expressly undertake, promise, or covenant to pay it, the question is at rest; but if he merely accepts the lease, which reserves the rent, and has the power by law to assign the term, the absence of such express undertaking affords strong evidence of the intent of the parties on this point." * * * * "Upon the whole, we think this covenant is to be considered an implied one, so far as respects the ques-

tion between these parties, and that it does not, on the face of it, import a mere personal obligation resting upon the defendant, upon the footing of an express contract after his tenancy has ceased." Between the case at bar and the one discussed by Judge PHELPS, of Vermont, there is no perceptible difference in principle.

The clear, strong, common-sense view which that distinguished jurist has taken of this much mooted question, will commend itself to the profession, as it has to this court, and adopting a similar line of thought upon the subject, we have but little hesitation in declaring that the law of this case, upon the facts found, is with the defendants, and that the judgment below should therefore be

Affirmed.